# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

FILED IN CLERKS OFFICE

MAY 29 '26 PM 2:57 USDC MA

BETTY VERRECCHIA
    Pro Se, Plaintiff,

V                                                            No. 4:26-cv-11814

HEI HOSPITALITY LLC,
and MERRITT HOSPITALITY LLC.

## PLAINTIFFS' AMENDED COMPLAINT
## LEAVE TO FILE GRANTED ON MAY 19, 2026

The Plaintiff respectfully requests this Court to file the Amended Complaint. The Plaintiffs Amended Complaint is attached.

## RELEVANT BACKROUND

1.On May 5, 2026, Plaintiff filed a Motion To Amend Complaint to Correct Misnomer, with the attached Amended Complaint. See attached **Exhibit A** .

2.On May 5, 2026,  Plaintiff sent the Defendants a copy of the Motion to Amend Complaint to Correct Misnomer with the attached AMENDED COMPLAINT.  See **Exhibit A**

3. On May 19, 2026, District Judge Margaret R. Guzman granted the Motion to Amend.

Betty Verrecchia, Pro Se
8 Watatic Pond rd
Ashburnham, Ma 01430
(570)516-9683
bigbet13@aol.com
May 28, 2026

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


Betty VERRECCHIA, Pro Se, Plaintiff,

V.

HEI HOSPITALITY LLC, Defendant, and

MERRITT HOSPITALITY LLC, Defendant,


No. 4:26-cv-11814


Verified Complaint and Jury Demand


Parties

1. The Plaintiff, Betty Verrecchia, Pro Se, resides at 8 Watatic pond rd, Worcester County, Ashburnham Massachusetts 01430.


2. The Defendant, HEI Hospitality LLC is a foreign limited liability company with a principal place of business at 101 Merritt 7 1st floor Corporate park , Norwalk CT 06851. Service of process may be made upon its Resident Agent HEI Hospitality LLC Corporation service company 84 State st , Boston Massachusetts 02109.

3, The Defendant, Merritt Hospitality LLC is a foreign limited liability company with a principal place of business at 101 Merritt 7 1st floor Corporate park, Norwalk CT 06851. Service of process may be made upon its Resident Agent Merritt Hospitality LLC Corporation service company 84 State st, Boston Massachusetts 02109.

4. At all times relevant to this complaint Arron Steve Ali, served as the Food and Beverage Director for HEI Hospitality LLC, Merritt Hospitality LLC and acted as a director and/or agent for the companies.

5. At all times relevant to this complaint  Emilia Erruda, served as the Human Resource Director for HEI Hospitality LLC, Merritt Hospitality LLC and acted as a director and/or agent for the companies.

6. At all times relevant to this complaint Joe Dadiego, served as the General Manager for HEI Hospitality LLC, Merritt Hospitality LLC and acted as a general manager and/or agent for the companies.

7. At all times relevant to this complaint Mark Manganaro, served as the Banquet Manager for HEI Hospitality LLC, Merritt Hospitality LLC and acted as a manager and/or agent for the companies.

8. At all times relevant to this complaint Sheshana Coley, is the current Human Resource Director for HEI Hospitality LLC, Merritt Hospitality LLC and acted as a director and/or agent for the companies.

9. The Plaintiff was hired as a full time banquet server on July 16, 1998 until February 27, 2023. She was terminated by Erruda, Ali, and Dadiego on February 27, 2023  for violating the rules of conduct by altering her time record. It was not deliberate misconduct. She simply made an honest mistake.

10. On February 1, 2023 the Plaintiff ended her evening shift at 9:14 pm. Her next shift was on February 2, 2023 at 5:30 am. The Plaintiff has a hundred and fifteen mile round trip commute to work. She made a sound decision to book and pay for a room on the evening of February 1, 2023. After the Plaintiff's morning shift on February 2, 2023 she returned to her room. She was allowed a late check out until 3 pm. When leaving the hotel she walked by the time clock and innocently by mistake on automatic Pilot she punched the time clock at 2:57 pm.

11. On February 2, 2023 the Plaintiff's schedule was 5:30 am - 9:30 am and 5:30 pm - 9:30 pm. It required four punches for the day she made five. Her morning shift punches were 5:32 am and 9:34 am. Her next punch was 2:57 pm that she made in error. Her evening shift punches were 5:25 pm and 9:40 pm.

12. On February 3, 2023 Ali falsified the Plaintiffs time card by adding a time punch at 5:26 pm and changing the sequence of the Plaintiffs 9:40 pm punch to create a fabricated third shift.

13. On or about February 3, 2023  Ali knowingly or unknowingly acted upon his fabricated third shift as a pretext to terminate the Plaintiff.

14, The surveillance tapes for February 2, 2023 show the Plaintiffs original punches for the day. The fabricated shift that Ali created was two hours and twenty-eight minutes. Ali subtracted two hours and forty minutes. This resulted in the Plaintiff being paid inaccurately.

15. The Plaintiff has made accidental time punch errors in the past under the same management that terminated her for the February 2, 2023 accidental 2:57 pm punch error. The Plaintiff never received any written or verbal warning when making a time punch error In the past. Past practice if there were any time punch errors the Plaintiff and Ali would simply fix the error. The Plaintiff has several text messages to support this claim. For example; text message from Ali to the Plaintiff on February 18, 2022 states Do you remember your hours worked on monday you missed a punch or you punched extra: you have 6:27am, 2:55pm & 3:40pm I'm putting you leaved at 5:30. Let me know if to adjust. The Plaintiff replied good morning. I think 5:30 sounds perfect, thanks. On February 3, 2023 Ali failed to follow past practice .

16. On February 4, 2023  Ali and Manganaro approached the Plaintiff while she was busy performing her work duties. Ali quickly showed a timecard to the Plaintiff and pointed to the 2:57 pm accidental punch from February 2, 2023 . Ali denied the Plaintiff the opportunity to accurately verify her hours by only showing the record for a few seconds. The Plaintiff said  that she did not make that punch because she did not recall making that punch. Ali then stated I guess we'll delete it. If Ali simply deleted the accidental punch the Plaintiffs other four punches were accurate to her February 2, 2023 schedule.

17. On or about February 6, 2023 the Plaintiff received a phone call from Erruda stating  that the Plaintiff was suspended pending further investigation.

18. On February 9, 2023 the Plaintiff received an email from Erruda . Erruda requested the Plaintiff's side of the story. The Plaintiff replied she did not make the 2:57 pm punch on February 2, 2023 because she did not recall making the punch.

19. On or about February 10, 2023 the Plaintiff received multiple text messages from coworkers stating that Ali published false and defamatory statements against the Plaintiff to other staff members.

20. On February 10, 2023 the Plaintiff sent an email to Erruda requesting her original time card record and the surveillance tapes from February 2, 2023 . Erruda failed to reply.

21. On February 13, 2023 the Plaintiff received an email from the Erruda stating she was conducting a comprehensive investigation on the Plaintiff. Erruda stated I will schedule a mutually convenient date and time to review. Erruda failed to schedule a date and time to review the comprehensive investigation.

22. The comprehensive investigation resulted with no findings. Erruda made multiple statements to the Plaintiff suggesting she resign.

23. The Plaintiffs original time record for February 2, 2023 was never released to her.

24. On February 22, 2023 the Plaintiff sent an email to Erruda . The Plaintiff stated I did nothing fraudulent on February 2, 2023. Please help me. Erruda failed to reply.

25. On February 27, 2023 the Plaintiff was terminated and received a ten page disciplinary record signed by Ali, Erruda, and Dadiego. The Plaintiff refused to sign the document because it contained inaccurate information and defamatory statements from Ali that are not truthful.

26. On February 27, 2023 the Plaintiff received the surveillance digital photos of her time clock punches on February 2, 2023. The surveillance photos exonerates the Plaintiff from the claims that lead to her termination.

27. On March 30, 2023 the plaintiff received a notice of disqualification from the Massachusetts Department Of Unemployment . In this notice Erruda And Ali claimed the Plaintiff was discharged for intentionally falsifying records from which wages are computed. Such discharge is attributable to deliberate misconduct in willful disregard of the employing units interest. Therefore, the Plaintiff was subject to disqualification . On March 30, 2023 the Plaintiff Appealed the notice of disqualification.

28. On May 1, 2023 the Plaintiff, Ali, and Erruda were sworn in at the unemployment  Appeal Hearing. In this hearing the Examiner asked Ali twice if that incident did not happen the Plaintiff would still be working there. Ali answered yes both times.

29. On May 1, 2023 at the Appeal Hearing Ali stated on February 2, 2023 the Plaintiff had five punches for the day and on the morning of February 3, 2023 he had added a punch at 5:26 pm to make it into six punches for payroll. On February 3, 2023 both the Plaintiff and Ali were in the building working Ali failed to have the Plaintiff approve his time card alterations.

30. On May 17, 2023 the Plaintiff received her unemployment Appeal Hearing results. The Massachusetts Adjudicator found the Plaintiffs testimony to be credible and her 2:57 pm punch was made in error and such error does not rise to the level of deliberate misconduct and willful disregard of the employing units interest. The employer did not meet its burden of proof in this case. The case was ruled in the Plaintiffs favor.

31. On May 1, 2023 under oath Ali stated the Plaintiff had five punches for February 2, 2023. Ali also said it was supposed to be four or six punches. Ali added a 5:26 pm punch to make it into six punches. These statements prove Ali altered the Plaintiffs time card, Ali made this alteration without the Plaintiffs consent.

32. On March 26, 2024 the Plaintiff filed a complaint with the Massachusetts Attorney General Office. On April 3, 2024 the Plaintiff received a private right of action letter. A true and accurate copy of this letter is attached hereto as Exhibit A.

33. On January 24, 2025 the Plaintiff sent an Official Demand Letter  to HEI Hotels and Resorts LLC Legal team, HEI CEO and Managing Partner Anthony Rutledge, HEI Chief Human Resource Officer Nigel Hurst, and HEI Region Senior Vice President of Operations Ryan O'Heir. The Plaintiff sent them certified US Mail . The Plaintiff has confirmation of receipt. All four Corporate Responsible Representatives failed to reply. A true and accurate copy of this letter is attached hereto as Exhibit B.

34. On September 5, 2025 the Plaintiff emailed Coley requesting her personnel file. On September 9, 2025 the Plaintiff received an email from Coley that contained four pdf files. Three of these files were titled Personnel files . One of the pdf files was titled termination docs. The termination docs were segregated from her personnel file. The segregated file had a personnel action form dated February 27,2023 that states termination with severance which was signed by both Erruda and Dadiego. The Plaintiff never received severance.

35. The segregated Personnel Action form dated February 27,2023  states the Plaintiff is not eligible for rehire.

36. The Plaintiff was terminated at the age of sixty six and four months.

### COUNT I - VIOLATION OF RECORD KEEPING M.G.L. c. 151, s 15
### ( AGAINST ALL DEFENDANTS )

37. The Plaintiff reaffirms and restates paragraphs 1 through 36 above.

38.  At all times relevant in this complaint Agents Ali, Erruda, and Dadiego were acting within the course and scope of their employment for the Defendants. Agents Ali, Erruda, and Dadiego were acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

39. This section requires employers to maintain true and accurate records for at least three years. Ali, Erruda, and Dadiego failed to maintain true and accurate records.

40. The Plaintiff has the right to inspect her records at any reasonable time. She requested to inspect her time records numerous times Ali, Erruda, and Dadiego failed to allow the Plaintiff to inspect her time records.

41. The Plaintiff has copies of her actual hours worked in personal logs, timelines, and surveillance footage that contradict Ali, Erruda, and Dadiego's records. Ali, Erruda, and Dadiego are in direct violation of this section.

### COUNT II - VIOLATION OF THE WAGE ACT M.G.L. c. 149, s 148
### ( AGAINST ALL DEFENDANTS )

42. The Plaintiff reaffirms and restates paragraphs 1 through 36 above.

43. At all times relevant in this complaint Agent Ali was acting within the course and scope of his employment for the Defendants. Ali was acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

44. Ali knowingly or unknowingly altered the Plaintiffs time records.

45. Ali's alteration of the Plaintiffs time records resulted in non payment of her earned wages. Under The Wage Act, Plaintiff is entitled to treble damages and attorney fees.

### COUNT III - RETALIATION  M.G.L. c. 149, s 148 & 148A
### ( AGAINST ALL DEFENDANTS )

46. The Plaintiff reaffirms and restates paragraphs 1 through 36 above.

47. At all times relevant in this complaint Ali, Erruda, and Dadiego were acting within the course and scope of their employment for the Defendants. Ali, Erruda, and Dadiego were acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

48. The Plaintiff engaged in protected activity by opposing the time card falsification.

49. Ali, Erruda, and Dadiego used the falsified time card as a pretext to terminate the Plaintiff in retaliation for asserting her rights.The Plaintiff is entitled to back pay wages lost from the date of retaliation to the trial and front pay. Pursuant to M.G.L. 149, s 150 the Plaintiff is entitled to a

mandatory award of treble damages for all lost wages and benefits plus reasonable attorney fees and costs of this action.

## COUNT IV - VIOLATION OF THE WAGE ACT  M.G.L. c. 149, s 148
### ( AGAINST ALL DEFENDANTS )

50. The Plaintiff reaffirms and restates paragraphs 1 through 36 above.

51. At all times relevant to this complaint Erruda, and Dadiego were acting within the course and scope of their employment for the Defendants. Erruda, and Dadiego were acting on the behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

52. The Plaintiffs severance benefits authorized in the signed Personnel Action Form by both Erruda, and Dadiego constitute wages within the meaning of the Massachusetts Wage Act, M.G.L. c. 149, s 148, as they were authorized and became due and payable upon the Plaintiffs termination.

53. Erruda and Dadiego failed to pay these wages in full on the day of the Plaintiffs involuntary discharge, in direct violation of M.G.L. c. 149, s 148.

54. Pursuant to M.G.L. 149, s 150 the Plaintiff is entitled to a mandatory award of treble damages for all lost wages and benefits plus reasonable attorney fees and costs of this action.

55. The Plaintiff has complied with all administrative requirements by filing a complaint with the Massachusetts Fair Labor Division and has received a Private Right of Action Letter.

## COUNT V - BREACH OF SEVERANCE CONTRACT
### ( AGAINST ALL DEFENDANTS )

56. The Plaintiff reaffirms and restates paragraph 1 through 36 above.

57. At all times relevant to this complaint Erruda and Dadiego were acting within the course and scope of their employment for the Defendants. Erruda and Dadiego were acting on the behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

58. On February 27, 2023 Erruda, and Dadiego entered into a valid and binding agreement regarding the terms of the Plaintiffs separation from employment.

59. The terms of this agreement were memorialized in a formal Personnel Action Form, executed and signed by both Erruda, and Dadiego on February 27, 2023.

60. The signed Personnel Action Form explicitly authorized " Termination w/severance, " creating a contractual obligation for the Defendants to pay the Plaintiff severance benefits.

61. The Plaintiff performed all obligations required under the terms of her employment and remained eligible for said severance.

62. Erruda, and Dadiego failed to perform their contractual obligations by failing to pay the authorized severance.

63. As a direct result of Erruda, and Dadiego's material breach, the Plaintiff suffered serious damages.

## COUNT VI -. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY ( AGAINST ALL DEFENDANTS )

64. The Plaintiff reaffirms and restates paragraphs 1 through 36.

65. At all times relevant in this complaint Ali, Erruda, and Dadiego were acting within the course and scope of their employment for the Defendants. Ali, Erruda, and Dadiego were acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

66. Ali stated that the reason for the Plaintiffs termination is the falsification of the timecard. This was a pretext Ali designed to conceal his illegal motive.

67. On February 4, 2023 the Plaintiff replied to Ali she said it wasn't me. We need to find out what happened. I want to know who's using my punch code. Ali stated I am not an investigator we will have to ask Erruda how this could have happened. The Plaintiff states I feel that someone is trying to set me up. This is obviously not a computer error.

68. Paragraph 31 in this complaint reaffirms that Ali made the alterations to the Plaintiffs time record without the Plaintiff consent.

69. Ali falsified the Plaintiff time record to create a for cause justification to avoid paying the Plaintiffs contractually or statutorily protected future income, severance and extensive benefits.

70. Terminating the Plaintiff based on Ali's falsified time record to deprive her of earned and promised compensation violates Massachusetts Public Policy.

71. As a direct result of this violation Plaintiff suffered damages, including but not limited to loss of income, loss of future income, the value of retirement and employment benefits.

## COUNT VII - WRONGFUL TERMINATION / RETALIATION
## ( AGAINST ALL DEFENDANTS )

72. The Plaintiff reaffirms and restates paragraphs 1 through 36.

73. At all times relevant in this complaint Ali, Erruda and Dadiego were acting within the course and scope of their employment for the Defendants. Ali, Erruda and Dadiego were acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

74. These Agents acts, omissions, practices, and courses of conduct resulted in  Wrongful Termination / Retaliation to the Plaintiff. As an employer in the Commonwealth, the Defendants are liable for wrongful termination when the discharge is in violation of well established law and Massachusetts Public Policy.

75. In addition the Plaintiffs termination was, among other things, as a result of their assertion of legally protected rights which are protected pursuant to public policy as well as law established by the Commonwealth of Massachusetts.

76. As a direct and proximate cause of their wrongful termination by ALi, Erruda, and Dadiego, the Plaintiff suffered damages, including but not limited to loss of income, pension benefits and fringe benefits, loss of employment and personal reputation, mental and emotional distress, and other financial losses, and other damages to their detriment.

## COUNT VIII - DEFAMATION
## ( AGAINST ALL DEFENDANTS )

77. The Plaintiff reaffirms and restates paragraphs 1 through 36.

78. At all times relevant in this complaint Ali, Erruda, and Dadiego were acting within the course and scope of their employment for the Defendants. Ali, Erruda, and Dadiego were acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

79, Ali, Erruda, and Dadiego statements against the Plaintiff are false and Defamatory.

80. Ali, Erruda, and Dadiego published false and Deflamatory statements against the Plaintiff.

81. Ali, Erruda, and Dadiego statements against the Plaintiff were made negligently, recklessly, and or intentionally.

82. Ali, Erruda , and Dadiego statements against the Plaintiff were made with actual malice and disregard for the truth.

83. Ali, Erruda, and Dadiego state the Plaintiff is unable for rehire. This statement is based on false and defamatory statements made by Ali.

84. As a result of Ali, Erruda, and Dadiego defamatory statements the Plaintiff is unable for rehire. The Defendants manage and operate the majority of the hotels and resorts in the United States. This makes it nearly impossible for the Plaintiff to seek employment in the industry that she has successfully worked in for thirtyfive years.

85. As a direct result of this defamation the Plaintiff has suffered serious damages not limited to loss of employment, humiliation, indignity, and unprecedented stress.

## COUNT IX - SLANDER AND LIBEL
### ( AGAINST ALL DEFENDANTS)

86. The Plaintiff reaffirms and restates paragraphs 1 through 36.

87. At all times relevant in this complaint Ali, Erruda, and Dadiego were acting within the course and scope of their employment for the Defendants. Ali, Erruda, and Dadiego were acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

88. Ali, Erruda, and Dadiego published orally and or in writing defamatory remarks about the Plaintiff.

89. Ali, Erruda, and Dadiego statements both written and spoken are not truthful and were constructed only to injure, defame, and hold the Plaintiff in scorn.

90. Ali, Erruda, and Dadiego defamatory statements, both spoken and written, have injured the plaintiff.

91. As a result of the statements, Plaintiff has sustained serious damages.

## COUNT X - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## ( AGAINST ALL DEFENDANTS )

92. The Plaintiff reaffirms and restates paragraphs 1 through 36.

93. At all times relevant in this complaint Ali, Erruda, and Dadiego were acting within the course and scope of their employment for the Defendants. Ali, Erruda, and Dadiego were acting on behalf of the Defendants, and in furtherance of their business interests. The Defendants are vicariously liable for all damages caused by the acts and omissions of their Agents.

94. Ali, Erruda, and Dadiego were negligent, reckless and grossly negligent in their actions, omissions, practices, and courses of conduct as described herein.

95. Ali, Erruda, and Dadiego knew or should have known that emotional distress was the likely or foreseeable result of their actions, omissions, practices and courses of conduct as described herein.

96. The actions, omissions, practices and course of conduct of these Agents were the cause of the Plaintiffs emotional distress, with physical manifestations.

97. The emotional distress sustained by the Plaintiff was of such nature that a reasonable person would have suffered emotional distress under the same circumstances.

98. As a direct and proximate cause of these Agents negligent infliction of emotional distress, the Plaintiff was caused to suffer general, special and consequential damages, including but not limited to emotional distress, with physical manifestations thereof, including but not limited to sleeplessness, and other physical symptoms, and suffered damages, including but not limited to loss of income and fringe benefits, mental and emotional distress, and other financial losses and other damages and losses, to their detriment.

## PRAYER FOR RELIEF.

The Plaintiff respectfully requests that this Honorable Court enters judgement in her favor and against all Defendants on all counts set forth herein. The Plaintiff prays for fair and adequate compensation for her lost income damages; emotional distress damages; back pay and front pay; punitive damages; treble damages; and such other damages recoverable by law; and other relief as this Honorable Court may deem appropriate and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully Submitted,

The Plaintiff,


Betty Verrecchia, Pro Se

8 Watatic Pond road

Ashburnham, MA 01430

570-516-3683

bigbet13@aol.com

Date: February 23, 2026.