**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

BETTY VERRECCHIA,

        Plaintiff,

    v.

HEI HOSPITALITY LLC, and MERRITT
HOSPITALITY, LLC,

        Defendants.

Civil Action No.  4:26-CV-11814-MRG

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants HEI Hospitality LLC and Merritt Hospitality LLC ("Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Defendants are a leading hotel-investment and third party management company. They terminated Plaintiff's employment at the hotel where she worked as a banquet server on February 27, 2023 after she falsified her time records and then lied about it – not once, but twice. Plaintiff expressly pleads that she violated company policy by falsifying her records, and she acknowledges, both implicitly and explicitly, that Defendants acted legitimately, without any improper motive, both with respect to her compensation and her termination.

Notwithstanding, Plaintiff brings numerous claims, all of which are factually and legally insufficient and subject to dismissal as a matter of law. Count I (violation of the recordkeeping law) fails because there is no private right of action for such a violation. Counts II, III, and IV (Massachusetts Wage Act claims) fail because Plaintiff does not plausibly allege that Defendants failed to pay her any earned wages, or that Defendants retaliated against her for engaging in activity

protected under the Wage Act. Some of the Wage Act claims are also time-barred. Count V (breach of contract) fails because Plaintiff does not plausibly allege facts demonstrating that the parties entered into a severance contract or that Defendants breached that contract. Counts VI and VII (wrongful termination in violation of public policy ("WTPP")) fail because Plaintiff has not, and cannot, identify a clear public policy to support her WTPP claim, or show that she engaged in conduct protected by any such public policy. Plaintiff also fails to plead facts plausibly demonstrating that Defendants terminated her employment in a bad faith attempt to deprive her of earned compensation. Counts VIII and IX (defamation, slander, and libel) similarly fail because they are untimely and/or inadequately pled. And Count X (negligent infliction of emotional distress ("NIED")) fails because, among other reasons, it is barred by the Massachusetts Workers' Compensation Act.

For these reasons, and as discussed herein, Defendants respectfully request an Order dismissing the FAC in its entirety, with prejudice.

### PLAINTIFF'S ALLEGATIONS[1]

Plaintiff worked for Defendants at a local hotel as a banquet server. ECF 22, FAC ¶¶ 9-10. On February 2, 2023, she was scheduled to work two shifts: the morning shift was from 5:30 a.m. until 9:30 a.m., and the night shift was from 5:30 p.m. until 9:30 p.m. *Id.* ¶ 11. That day, she punched in at 5:32 a.m. and out at 9:34 a.m., and she punched in again at 5:25 p.m., and punched out at 9:40 p.m. *Id.* ¶ 11. However, Plaintiff also punched in that day at 2:57 p.m., with no corresponding out-punch. *Id.* ¶¶ 10-11. Because her time card needed to have either "four or six punches," her manager "added a punch-out at 5:26 p.m. [i.e., when she commenced her night shift]

---

[1] For purposes of this Motion, Defendants assume the non-conclusory factual allegations in the FAC are true. In doing so, Defendants do not agree that the allegations are indeed true, and expressly reserve the right to further respond to these allegations.

to make it six punches for payroll." *Id.* ¶¶ 29, 31. Plaintiff did not work the erroneous third shift from 2:57 p.m to 5:25 p.m. *Id.* ¶ 12.

On February 4, 2023, Plaintiff's managers confronted Plaintiff about the 2:57 p.m. time punch. *Id.* ¶ 16. Plaintiff twice denied making the 2:57 p.m. punch, including on February 4, 2023 and February 9, 2023. *Id.* ¶¶ 16, 18. However, she subsequently admitted to making the punch. FAC ¶¶ 9, 24, 30. Plaintiff expressly pleads that she engaged in misconduct by altering her time record in violation of the rules of conduct, but she claims that her misconduct was not deliberate.[2] FAC ¶ 9.

Plaintiff claims that on February 10, 2023, she received text messages from co-workers that her manager, Aaron Steve Ali ("Ali") published false and defamatory statements against Plaintiff to other staff members. *Id.* ¶¶ 4, 19.

Plaintiff was terminated on February 27, 2023 for violating the rules of conduct, by altering her time record. *Id.* ¶ 9. On September 5, 2025, Plaintiff submitted a personnel record request, to which the Company responded on September 9, 2025. *Id.* ¶ 34. Within the documents produced to Plaintiff, there was a personnel action form dated February 27, 2023, which stated that Plaintiff was terminated with severance, and that she is not eligible for rehire. *Id.* ¶¶ 34-35. However, Plaintiff never received, signed, or agreed to any severance agreement. *Id.* ¶ 34.

## ARGUMENT

### I.    RELEVANT LEGAL STANDARDS

To survive a 12(b)(6) motion, a complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[M]ere conclusory statements" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] Here, and elsewhere in the FAC, Plaintiff appears to conflate the permissive standards applied by the Massachusetts Department of Unemployment Assistance with her legal burdens of proof in this action.

(2009). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Dismissal is appropriate if the complaint "fails to set forth factual allegations . . . respecting each material element necessary to sustain recovery[.]" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

In evaluating the plausibility of pleadings, courts consider the pleadings as well as "implications from documents attached to or fairly incorporated into the complaint." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A document is fairly incorporated into the complaint if it is central to the plaintiff's claim and its authenticity is not disputed. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014). Plaintiff's February 2, 2023 timecard audit and February 9, 2023 paystub, attached hereto as Exhibits A and B, are fairly incorporated and may be considered because their authenticity is not disputed, they are central to Plaintiff's claims, and they are implicitly or explicitly referenced throughout the FAC. *See, e.g.*, FAC ¶¶ 10-11, 23, 31, 33-34, 44, 45; FAC Ex. B.

## II.    THERE IS NO PRIVATE RIGHT OF ACTION FOR VIOLATION OF THE RECORDKEEPING LAW (COUNT I)

To begin, Plaintiff's claim under M.G. L. c. 151, § 15 (Count I) fails because there is no private right of action for failure to keep accurate records. *Grogan v. All My Sons Business Development LLC*, 552 F. Supp. 3d 142, 147 (D. Mass 2021) ("There is no separate cause of action where an employer fails to keep accurate records."); *Tortolano v. Lemuel Shattuck Hosp.*, No. 1581CV06928, 2016 WL 10891533, at *3 (Mass. Super. July 14, 2016) ("[B]y not including ch. 151, § 15 in ch. 149, § 150, where the Legislature gave private rights of action to employees, the Legislature did not intend to provide a private right of action for ch. 151, § 15."). Thus, Plaintiff

is foreclosed from bringing any claim for violation of the recordkeeping law, and Count I must be dismissed.

### III.    PLAINTIFF'S WAGE ACT CLAIMS FAIL (COUNTS II, III, AND IV)

Plaintiff's Wage Act claims are also subject to dismissal. In Count II, Plaintiff alleges that her manager "knowingly or unknowingly altered Plaintiff's time records[,]" "resulting in non payment of her earned wages." FAC ¶¶ 44-45. In Count III, Plaintiff asserts a claim for Wage Act retaliation, asserting that she "engaged in protected activity by opposing the time card falsification," and that her managers used the falsified time card as a pretext to terminate her employment. FAC ¶¶ 48-49. And in Count IV, Plaintiff alleges that the "severance" referred to in the above-referenced personnel action form constituted unpaid wages. FAC ¶¶ 52-53. None of these claims can survive, as a matter of law.

> **A.    Plaintiff's Wage Act Claim in Count II Fails Because It is Untimely and Plaintiff Does Plausibly Allege That Defendants Failed to Pay Her for Hours Worked.**

> **1.    Count II is Time-Barred.**

As a preliminary matter, Plaintiff's Wage Act claim in Count II is untimely because it relies on an alleged underpayment that occurred outside of the three-year statute of limitations window. *See* M.G.L. c. 149, § 150. Specifically, Plaintiff claims that she was paid inaccurately for work she performed on February 2, 2023. FAC ¶¶ 14, 45. Plaintiff was paid on February 9, 2023 for the pay period that included February 2, 2023. (*See* Ex. B - Feb. 9 Paystub.) Her original Superior Court Complaint was filed on February 25, 2026, which is more than three years after Plaintiff was placed on notice of any alleged underpayment.[3] *See* ECF 1. As a result, Count II is time-barred and must

---

[3] This is true even factoring in the 8-day period in which the statute of limitations was tolled due to Plaintiff's pending complaint with the Attorney General's Office. Plaintiff filed her complaint with the Attorney General on March 26, 2024, and received her Right to Sue on April 3, 2024 (i.e,, eight days later). Therefore, to be timely, Plaintiff was

be dismissed. *See Crocker v. Townsend Oil Co.*, 464 Mass. 1, 11 (2012) (holding that Wage Act claim for failure to pay wages was limited by three-year statute of limitations period where "the plaintiffs reasonably should have been aware that they were not receiving due compensation each time [defendant] paid them").

### 2.   Plaintiff Cannot Recover for Time She Did Not Work.

Plaintiff's Wage Act claim in Count II also fails on the merits because the FAC contains no allegations plausibly demonstrating that the Company failed to pay her for time worked. While Plaintiff asserts, in conclusory terms, that the "alteration" of her time card resulted in non-payment of her earned wages, she does not explain how or why this is so. FAC ¶¶ 43-5. Plaintiff admits that she created a false time punch at 2:57 p.m. on February 2, 2023, and that she did not actually work the erroneous third shift. FAC ¶¶ 10-13. She is not entitled to any compensation for the third shift under the Wage Act. *See Jean Claude Hakuzimana v. Ivory Sys., Inc.*, No. 1:24-CV-12672-JEK, 2026 WL 880397, at *9 (D. Mass. Mar. 31, 2026) (plaintiff failed to state claim under Wage Act because he was paid for hours actually worked) (citing *Calixto v. Coughlin*, 481 Mass. 157, 161 (2018)) ("The extraordinary relief the Wage Act provides . . . is directed at . . . not paying wages for work actually performed, and not at other employment violations.").

To the extent Plaintiff purports to allege that, in correcting the timecard errors that stemmed from her false 2:57 p.m. time punch, Defendants underpaid her for time actually worked, this allegation is not supported by her time records, which are extensively referenced and fairly incorporated into the FAC. The third shift (that Plaintiff did not actually work) lasted from 2:57 p.m. until 5:25 p.m., which is two hours and twenty-eight minutes. FAC ¶ 14. Plaintiff's timecard audit for February 2, 2023 confirms that her timecard was adjusted only to remove the erroneous

---

required to file her Superior Court Complaint no later than February 17, 2026. *See* M.G.L. c. 149, § 150. She failed to do so.

two hours and twenty-eight minutes from her time for that day. *See* Exhibit A. Thus, according to the FAC and documents fairly incorporated into the FAC, she was properly paid, and her Wage Act claim in Count II fails.

      **B.      Plaintiff Fails to State a Claim for Wage Act Retaliation.**

Plaintiff's Wage Act retaliation claim in Count III fails because she did not engage in activity protected under the Wage Act, and she cannot establish that her termination was in retaliation for asserting any rights under the Wage Act.

To state a claim for Wage Act retaliation, Plaintiff must allege facts demonstrating that: (1) she engaged in conduct that the Wage Act protects; (2) her employer subjected her to an adverse employment action; and (3) she was subjected to the adverse employment action because of her protected conduct. *Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 531 (1st Cir. 2015) (citing M.G.L. c. 149, § 148A). "The plain language of the first paragraph of § 148A extends the protection of the statute to employees who are penalized for taking 'any action' to seek their rights under the laws governing wages and hours. A complaint made to an employer (or a manager of the employer) by an employee who reasonably believes that the wages he or she has been paid violate such laws readily qualifies as such an 'action.'" *Smith v. Winter Place LLC*, 447 Mass. 363, 367 (2006).

Plaintiff cannot establish the first element of her *prima facie* case because the FAC contains no allegations establishing that, prior to her termination,[4] Plaintiff complained to anyone about not being paid accurately or otherwise asserted any rights under the Wage Act. She alleges, in purely

---

[4] Of course, to the extent Plaintiff's alleged protected activity occurred at the unemployment hearing – or in any other context after her termination date of February 27, 2023, there cannot as a matter of law be any causal connection, because she had already been terminated before any alleged opposition activity. *See, e.g., Mole v. Univ. of Massachusetts*, 442 Mass. 582, 593 (2004) (affirming judgment for employer where timing of events did not allow inference that employee's protected activity caused the adverse employment action).

conclusory fashion, that she "opposed time card falsification" (*see* FAC ¶ 48),  but alleges no facts describing that alleged opposition. As such, she has not pled "enough facts to make entitlement to relief plausible in light of" the legal elements of her claim. *Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014).

Plaintiff also offers no plausible allegations that would establish the third element of her *prima facie* case. She expressly admits that she falsified her time records by punching in when she was not actually working (which she later denied doing, twice, before ultimately admitting to the misconduct), and that her actions constituted a policy violation, for which she was ultimately terminated. FAC ¶¶ 9-10, 25. She speculates that her managers either "knowingly or unknowingly" acted upon some retaliatory animus in terminating her employment (*see* FAC ¶ 13), but factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555; *see also Goodman v. Main Springs*, No. CIV.A. 14-12585-FDS, 2014 WL 5454220, at *2 (D. Mass. Oct. 27, 2014) (statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory are insufficient to survive a motion to dismiss). Under these circumstances, the Wage Act retaliation claim cannot survive.

### C.    Plaintiff's Wage Act Claim in Count IV Fails Because Severance Payments Are Not "Wages" Under the Wage Act.

In Count IV, Plaintiff brings yet another claim under the Wage Act, this time alleging that the personnel and related documents she received contained a "personnel action form" referencing "termination with severance." FAC ¶ 34. Based solely on this stray reference, Plaintiff claims that Defendants violated the Wage Act by failing to pay her severance upon termination. FAC ¶ 53.

First, as described *infra*, Sec. V, Plaintiff never received or signed any severance agreement, and Plaintiff was not entitled to any severance payment. FAC ¶ 34.

However, even assuming, *arguendo*, that Plaintiff was owed severance, a severance payment is not "wages" under the Wage Act. *Prozinski v. Ne. Real Est. Servs.*, 59 Mass. App. Ct. 599, 603 (2003); *see also Sullivan v. etectRx, Inc.*, 67 F.4th 487, 496 (1st Cir. 2023) (citing *Prozinski*, 59 Mass. App. Ct. at 603) ("As [defendant] notes, the Massachusetts Appeals Court has held that severance benefits are not 'wages' for purposes of the Wage Act."). Indeed, "the Massachusetts Supreme Judicial Court has thrice cited *Prozinski* with approval for its holding that the Wage Act does not cover severance pay." *Calixto*, 481 Mass. at 162 n.9; *Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 713 (2018); *Weems v. Citigroup, Inc.*, 453 Mass. 147, 151 (2009). Thus, Plaintiff cannot recover any severance payment under the Wage Act, and Count IV fails.

## IV.    PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS (COUNT V)

Plaintiff's "breach of severance contract" claim in Count V fares no better. To state a claim for breach of contract, Plaintiff must plausibly allege facts demonstrating that "there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020) (citing *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 46 N.E. 3d 24, 39 (2016)).

Plaintiff alleges that the "personnel action form" in her personnel file created a contract entitling her to severance benefits. But she admits she did not receive or even have knowledge of that document until September 9, 2025, years after her termination. FAC ¶ 34.  She does not allege that she signed or otherwise assented to any severance agreement, or that she provided any consideration in exchange for severance. For example, in cases involving an employee discharge, any severance payment is typically conditioned upon the employee's agreement to a general release of claims. *See e.g., Dahua Tech. USA, Inc. v. Zhang*, 138 F.4th 1, 5 (1st Cir. 2025); *Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 206 (D. Mass. 2009).

Thus, even if some document in Plaintiff's personnel record references a severance payment, Plaintiff has not plausibly alleged the existence of a valid contract entitling her to any such payment, and her breach of contract claim must therefore be dismissed. *See Farnsworth v. Towboat Nantucket Sound, Inc.*, 36 F. Supp. 3d 247, 254 (D. Mass. 2014), *aff'd*, 790 F.3d 90 (1st Cir. 2015) (formation of contract requires bargain in which there is manifestation of mutual assent to exchange and consideration).

## V.   PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (COUNTS VI & VII)

Plaintiff's WTPP claims in Counts VI and VII are also facially invalid. WTPP is a narrowly construed common law claim that provides a remedy for an at-will employee who is "terminated contrary to a well-defined public policy." *Wright v. Shriners Hosp. for Crippled Child.*, 412 Mass. 469, 472 (1992). Courts (primarily the Massachusetts Supreme Judicial Court ("SJC")), not the legislature, define what constitutes a public policy for purposes of WTPP claims. The SJC "consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would convert the general rule that an employment at-will contract can be terminated at any time for any reason or for no reason at all into a rule that requires just cause to terminate an at-will employee." *King v. Driscoll*, 418 Mass. 576, 582 (1994) (citation modified).

Generally, relief for WTPP is only available when an employee is terminated for asserting a legally guaranteed right (e.g., filing a worker's compensation claim), for doing what the law requires (e.g., serving on a jury), for refusing to do what the law forbids (e.g., refusing to commit perjury), or for performing an important public deed (e.g., cooperating with a criminal investigation). *Wood v. City of Haverhill*, No. 1:23-CV-12377-JEK, 2024 WL 4189932, at *9 (D. Mass. Sept. 13, 2024) (citing *Meehan v. Med. Info. Tech., Inc.*, 488 Mass. 730, 733 (2021)); *Acher v. Fujitsu Network Commc'ns, Inc.*, 354 F. Supp. 2d 26, 38 (D. Mass. 2005) (citing *Falcon v. Leger*,

62 Mass. App. Ct. 352 (2004)). To state a WTPP claim, Plaintiff must show that she engaged in conduct protected by a well-established public policy and was terminated "for a reason contrary to a well-established public policy." *Shea v. Emmanuel Coll.*, 425 Mass. 761, 764 (1997). Plaintiff fails to allege sufficient facts that would enable her to make this showing.[5]

### A. Plaintiff's WTPP Claims in Counts VI and VII Fail Because Plaintiff Has Not Identified Any Public Policy Sufficient to Ground Those Claims.

First, Plaintiff has not identified any public policy, much less a "clear" one, sufficient to ground her WTPP claims in Counts VI and VII. In Count VI, she simply alleges that her manager altered her time records (i.e., the very same time record that Plaintiff admits she falsified, whether on purpose or otherwise) and terminated her employment. FAC ¶¶ 66, 70. And in Count VII, she alleges, in purely conclusory fashion, that she "asserted legally protected rights which are protected pursuant to public policy." FAC ¶ 75. In neither Count does Plaintiff come anywhere close to adequately pleading that she engaged in conduct covered by a well-established public policy, or that she was terminated for engaging in that conduct. As a result, her claims in Counts VI and VII fail. *See, e.g., Wood*, 2024 WL 4189932, at \*10 (dismissing WTPP claim at pleading stage for failure to plausibly allege conduct grounded in "well defined, important [public policy] . . . preferably embodied in a textual law source.").

### B. To the Extent Plaintiff Attempts to Bring a *Fortune* Claim in Count VI, that Claim Fails Because Plaintiff Does Not Claim Defendants Deprived Her of Earned Compensation.

To the extent Plaintiff attempts to bring a *Fortune* claim in Count VI, that claim also fails because Plaintiff cannot meet the necessary elements to establish such a claim.

---

[5] "Whether discharging an at-will employee for engaging in particular conduct violates public policy is a question of law for the court, and an at-will employee bears the burden of showing that it does." *Elliott-Lewis v. Abbott Lab'ys, Inc.*, 411 F. Supp. 3d 195, 208 (D. Mass. 2019).

In the context of at-will employment, Massachusetts courts have recognized a limited claim for breach of the implied covenant of good faith and fair dealing where an employer terminates an employee on the eve of the employee's anticipated receipt of specific, identifiable compensation, such as commissions, tied to her own past performance. *Shen v. Biogen Idec Inc.*, 523 F. Supp. 2d 48, 54 (D. Mass. 2007). To bring such a claim, a plaintiff must properly allege: (1) status as an at-will employee; (2) termination of her employment; (3) termination without "good cause" or in "bad faith"; and (4) termination with the purpose of depriving her of compensation for her own past services. *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 100-05 (1977) (recognizing a limited cause of action in the employment arena for a good faith and fair dealing claim)*; Gram v. Liberty Mutual Ins. Co.*, 384 Mass. 659, 672-73 (1981) ("*Gram I*"); *Harrison v. Netcentric Corp.*, 433 Mass. 465, 473 (2001)); *Gram v. Liberty Mutual Ins. Co.*, 391 Mass. 333, 335 (1984) ("*Gram II*"). The *Fortune* doctrine requires that a plaintiff be deprived of *earned* compensation based on her own past services. *Struck v. Plymouth Mortgage Co.*, 414 Mass. 118, 120 (1993); *McCone v. New England Tel. & Telegraph Co.*, 393 Mass. 231, 234-35 (1984). Here, Plaintiff's *Fortune* claim would fail because she does not allege Defendants terminated her in in a bad faith attempt to deprive her of earned compensation.

First, Plaintiff fails to identify *any* specific, identifiable compensation she was owed. As discussed *supra*, Sec. III C. and IV, Plaintiff had not earned and was not otherwise entitled to any severance payment, and she was paid for the shifts she actually worked on February 2, 2023. FAC ¶¶ 11, 34.

Further, the FAC contains no plausible allegations suggesting that Defendants terminated her employment for the *purpose* of avoiding any payment to Plaintiff. According to the express allegations in the FAC, Plaintiff engaged in misconduct by initiated a false time punch. FAC ¶ 9-

12

11. She initially denied making the punch, but later admitted doing so. FAC ¶¶ 16, 18, 24. She was subsequently terminated for violating the rules of conduct. FAC ¶ 9. The FAC does not contain any allegation whatsoever plausibly demonstrating that Plaintiff's managers terminated her to avoid paying her any earned compensation. Accordingly, Count VI must be dismissed.

## VI.   PLAINTIFF'S DEFAMATION CLAIMS FAIL (COUNTS VIII & IX)

Plaintiff's claims for defamation, slander, and libel in Counts VIII and IX (the "defamation claims") fail as a matter of law because they are untimely and/or because Plaintiff has not alleged facts plausibly establishing that Defendants published false statements about her.

Defamation is a false or damaging communication, of and concerning the plaintiff, which is published or shown to a third party. *Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 576 (D. Mass. 2015) (citation omitted); *Yohe v. Nugent*, 321 F.3d 35, 39 (1st Cir. 2003). Slander and libel are not distinct from defamation, but rather, are two kinds of defamation. *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 89 (D. Mass. 2010). Specifically, libel is a written defamatory statement, whereas slander is defamation through oral communication.[6] *Id.* To survive a motion to dismiss on her defamation claims, Plaintiff must plausibly allege: (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s); (2) the means and approximate dates of publication to a third party; and (3) the falsity of the alleged statement. *Fiorillo*, 85 F. Supp. 3d at 576 (citation omitted). In Massachusetts, the tort of defamation is subject to a stricter pleading standard than other claims, requiring plaintiffs "to plead the elements of their claims with specificity in order to survive a motion to dismiss" for failure to state a claim. *Id.*

---

[6] Plaintiff acknowledges that her allegations of defamation, slander, and libel are legally indistinguishable. In the FAC, Count IX merely repeats the allegations in Count VIII. She fails to allege any new facts – or any facts at all – that would distinguish the two Counts.

Here, Plaintiff asserts, in vague and conclusory terms, that on February 10, 2023, she received text messages from coworkers that Ali "published false and defamatory statements against [her] to other staff members." FAC ¶ 19. She further alleges that Defendants defamed her by stating in her February 27, 2023 personnel action form that she is ineligible for rehire with Defendants.  FAC ¶¶ 35, 83. Plaintiff's allegations fall well short of stating a claim for defamation, particularly in light of the heightened pleading standard.

**A.    The Defamation Claim Fails to the Extent It is Based on the Alleged February 10, 2023 Statement(s) Because It Is Both Untimely and Inadequately Pled.**

First, to the extent Plaintiff bases her defamation claim on alleged statements made on February 10, 2023, that claim is time-barred. Defamation claims carry a three-year statute of limitations from the date on which the claim accrues. M.G.L. c. 260, § 4. Plaintiff explicitly pleads that she became aware of the alleged defamatory statements on February 10, 2023 (*see* FAC ¶ 19), and therefore, she was required to file her defamation claim as to these allegations by February 10, 2026. However, Plaintiff did not file her Complaint in the Superior Court until February 25, 2026, after the limitations period had expired. *See* ECF 1. The defamation claim based on the alleged February 10, 2023 statement(s) is therefore untimely and must be dismissed. *See McLaughlin v. Bos. Ret. Bd.*, 146 F. Supp. 3d 283, 290 (D. Mass. 2015) (dismissing plaintiff's defamation claim where publication of alleged defamatory statement occurred more than three years prior to filing).

Even if this claim were timely, which it is not, Plaintiff does not allege any facts describing the alleged statement(s) on February 10, 2023, as she is required to do to state a claim. *Fiorillo*, 85 F. Supp. 3d at 576. Instead, she simply alleges, in conclusory fashion, that Ali made a defamatory statement. FAC ¶ 19. These allegations are insufficient as a matter of law to state a claim for defamation. *Id.*; *see also Iqbal*, 556 U.S. at 678 (""Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

14

**B.      The Defamation Claim Based on Statement Contained within the February 27, 2023 Personnel Action Form Is Inadequately Pled.**

Plaintiff's defamation claim also fails to the extent it is based on the statement in the February 27, 2023 personnel action form that Plaintiff is "not eligible for rehire." FAC ¶ 35.

First, there is no allegation that the personnel action form was published to any third party. It is a purely internal document that was part of Plaintiff's personnel file, and by Plaintiff's own admission, was not shared with any third party. FAC ¶ 34-35. *See White v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 442 Mass. 64, 66 (2004) ("The publication element of defamation requires that the defendant communicate the defamatory statement to a third party.").

Second, Plaintiff cannot demonstrate that the statement that she is "not eligible for rehire" is false. FAC ¶ 35. Plaintiff expressly pleads that she falsified her time records, and was terminated as a result of her violation of Company policy. FAC ¶¶ 9-11. Her personnel record states that she is ineligible for hire, and there are no allegations in the FAC that would enable Plaintiff to demonstrate otherwise. Plaintiff's inability to establish falsity is dispositive of her defamation claim. *Noonan*, 707 F. Supp. 2d at 90 ("The lodestar of Massachusetts defamation law is the axiom that truth is an absolute defense to defamation.").

Finally, to the extent Plaintiff's defamation claims concern any statements Ali or other Company witnesses made about her during her unemployment hearing, these statements are insulated from defamation liability by the litigation privilege. *See Correllas v. Viveiros*, 410 Mass. 314, 320 (1991) ("It is well established that statements made by a witness or party during trial, if pertinent to the matter in hearing, are protected with an absolute privilege against an action for defamation.")

Plaintiff's defamation claims are legally insufficient and must be dismissed.

### VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT X)

#### A.    The NIED Claim Is Barred By the Massachusetts Worker's Compensation Act.

Plaintiff's NIED claim fails from the outset because it is barred by the exclusivity provision of the Workers' Compensation Act. *See* M.G.L. c. 152, § 26; *Clarke v. Kentucky Fried Chicken of California, Inc.*, 57 F.3d 21, 29 (1st Cir. 1995) (affirming dismissal of plaintiff's common law tort claims on preemption grounds); *Morehouse v. Berkshire Gas Co.*, 989 F. Supp. 54, 65 (D. Mass. 1997) ("Claims for [NIED] . . . do not fit the exception for intentional torts recognized by the SJC in *Chasdi*, and are therefore barred by the [Workers' Compensation] Act."); *Ruffino v. State St. Bank & Tr. Co.*, 908 F. Supp. 1019, 1048 (D. Mass. 1995) (holding that plaintiff's NIED claim was barred by the exclusivity provision of the Workers' Compensation Act). As such, Count X must be dismissed as a matter of law.

#### B.    Plaintiff Does Not Plead Facts to Support a NIED Claim.

While the Court need not go any further to dismiss the NIED claim, Plaintiff also fails to plead facts that would support such a claim, which is separately dispositive.

To state a claim for NIED, Plaintiff must plausibly allege facts demonstrating: (1) negligence; (2) severe emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. *Ligotti v. Daly XXL Commc'ns, Inc.*, No. CV 16-11522-MLW, 2018 WL 11606495, at *9 (D. Mass. Apr. 27, 2018). "To establish the negligence prong of an NIED claim, a plaintiff must allege that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Steiner v. eBay, Inc.*, 795 F. Supp. 3d 144, 171 (D. Mass. 2025) (internal quotations omitted).

16

Plaintiff's allegations in support of her NIED claim amount to nothing more than a mechanical recitation of the elements of NIED. *See* FAC ¶¶ 94-98. She does not, and cannot, allege *any* facts describing the allegedly negligent conduct, or why a reasonable person would have suffered severe emotional distress as a result. Count X must therefore be dismissed as a matter of law. *See Iqbal, supra.*

## CONCLUSION

Defendants respectfully request an Order dismissing the FAC in its entirety, with prejudice.

DATED:  June 12, 2026                                Respectfully submitted,


*/s/ Christopher W. Kelleher*
Christopher W. Kelleher (BBO # 705508)
ckelleher@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

*Attorneys for Defendants*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2026, a true and accurate copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Christopher W. Kelleher*
Christopher W. Kelleher